UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Justin E. Klein (Justin.Klein@icemiller.com)
Thomas Bousnakis (Thomas.Bousnakis@icemiller.com)
ICE MILLER LLP
1500 Broadway, 29th Floor
New York, NY 10036
(212) 824-4973
*Attorneys for Plaintiff Suite, LLC*

| | |
|---|---|
| SUITE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.:  -CV- |
| ) | |
| ORCHESTRADE FINANCIAL SYSTEMS, INC. ) | |
| ) | |
| Defendant. ) | **COMPLAINT** |
| ) | |

Plaintiff, Suite, LLC ("Suite"), by its attorneys, Ice Miller LLP, alleges as and for its Complaint against Defendant Orchestrade Financial Systems, Inc. ("Orchestrade") as follows:

**NATURE OF THE ACTION**

1.      This action for breach of contract arises from Defendant Orchestrade's refusal to pay royalty fees due and owing to Suite pursuant to a software distribution agreement. Specifically, Orchestrade has breached the parties' agreement by (1) failing to pay Suite royalties from license fees Orchestrade received from at least two customers who operate Suite's software and (2) failing to provide Suite with sufficient information to determine whether Orchestrade has engaged in additional activities that entitle Suite to receive royalty fees under the parties' agreement.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the amount in controversy, excluding interest and costs, exceeds $75,000.

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) because Defendant conducts substantial business within the State of New York and a substantial part of the events or omissions giving rise to Suite's claims occurred in the State of New York.  Additionally, Plaintiff and Defendant have each consented to jurisdiction in any United States federal court by contract.

## THE PARTIES

4.      Suite is a New York limited liability company with its principal place of business at 60 East 42nd Street, New York, New York 10165.

5.      Upon information and belief, Orchestrade is a Delaware corporation with its principal place of business at 2929 Campus Drive, Suite 250, San Mateo, California 94403.

## FACTS

### I.      Suite's ALib Software

6.      Suite is a vendor of quantitative financial analytic software used by financial institutions to compute market values and analyze market risk inherent in financial derivatives transactions and portfolios. Established in 2001, Suite's global customer base includes top-tier banks, data-providers, ECN's/online trading platforms, fund-services providers, hedge funds, and small community banks. Suite also provides customized software implementations and independent valuation services.

2

7.     Suite's primary analytic software, the ALib Analytic Library ("ALib"), is used for pre-execution pricing, risk management and valuations on bonds, interest-rate swaps and related rates derivatives products such as options and credit derivatives.

8.     ALib is comprised of over 600 financial analytic functions (the "Functions"). The Functions provide the business intelligence needed by financial institutions to project values of financial instruments which derive their value from observed market rates and prices of instruments with similar characteristics and sensitivity profiles.

9.     The Functions range from very simple algorithms (such as date routines and interpolation routines) to cash-flow generation, financial math and complex matrix and polynomial functions as well as trinomial-tree routines that value swap options. Underpinning the library are over 1,000 underlying analytic sub-routines written and maintained in the C and C++ programming language. A code-generation utility is maintained by Suite which compiles the underlying analytics into program interfaces (API's) such as Java, C-Sharp, C++, Python, VB, MATLAB and EXCEL add-ins.

10.    ALib is fundamental to Suite's business – indeed, it is the core product that Suite offers to the financial market. Suite expends significant money and effort to develop and maintain ALib and it is Suite's primary source of income.

## II.    The Agreement

11.    Orchestrade owns and markets the Orchestrade Financial System ("OT"), a software product that Orchestrade advertises as the "most modern, cross-asset, front-to-back trading and risk management platform for banks, asset managers and hedge funds." Orchestrade also claims that "[OT] enables financial institutions to achieve an aggregated real-time view of P&L and risks across all asset classes -- as a standalone system or as a central hub,

CO\6056807.9

bringing in market data, risk metrics and trade data from multiple systems." Orchestrade does not sell OT to its customers outright.  Instead, it charges its customers a license fee to use it.

12.     Prior to 2013, OT was incompatible with Suite's ALib software. As a result, hedge funds, banks, and other customers who rely on Suite's analytics to inform their trading decisions were unlikely to become Orchestrade users.

13.     Recognizing a mutual opportunity to expand their respective customer bases, on May 22, 2013 the parties entered into a contract (the "Agreement") pursuant to which Orchestrade's OT platform was enhanced to embody an ALib interface to make it compatible with Suite's ALib software.  The resulting ALib-compatible Platform (the "Integrated Platform") was created by cooperation among Suite and Orchestrade.

14.     Pursuant to the Agreement, Suite provided Orchestrade with a copy of ALib, a non-exclusive license to ALib, a proprietary Excel-based prototyping tool, and Suite's support, expertise, and other information in order to build the Integrated Platform. Additionally, Suite publicized the relationship on its website and issued a press release to advertise the availability of the composite product following a successful implementation at a large fixed-income focused hedge fund.

15.     A customer who purchases a license to the Integrated Platform from Orchestrade is able to use ALib by either (1) activating the ALib product key through a full copy of the ALib software included in the Integrated Platform or, (2) in the case of customers who already independently hold a license to ALib ("Prior ALib Customers"), contacting Suite or Orchestrade customer support to connect the customer's existing version of ALib to the Integrated Platform.

4

16.     In exchange for Suite's support and the ability to reach Suite's customer base, the Agreement requires that Orchestrade pay Suite a royalty fee equal to 25% of all fees received for all licenses it sells to customers who use the Integrated Platform to access the ALib software. This royalty is owed without regard to whether the customer is new to ALib or is a Prior ALib Customer.

17.     More specifically, the Agreement requires that Orchestrade pay Suite a 25% royalty for all of the licenses Orchestrade sells to customers for the "Orchestrade Financial System (from the initial version of such software product or service which contains one or more components of the Licensed Software)." Licensed Software is defined in the Agreement to mean ALib, including all of its "modules, components and versions."

18.     In addition to the royalty fee earned in connection with fees received by Orchestrade for all licenses to the Integrated Platform, the Agreement also provides that the parties could agree on "such other [Orchestrade] software as agreed with [Suite] from time to time" that would also be subject to the Agreement's 25% royalty. Accordingly, in addition to *requiring* Orchestrade to pay Suite royalty fees on any Orchestrade software utilizing the ALib interface, the Agreement also contemplated that the parties may decide after execution of the Agreement that Suite would be entitled to royalties on other Orchestrade software not containing any component of ALib.

19.     Suite has no control over the pricing that Orchestrade charges its customers for licenses to use the Integrated Platform. Accordingly, pricing is within Orchestrade's discretion, subject only to its obligation to act in good faith.

20.     The Agreement further requires that within 30 days after the close of each calendar quarter, Orchestrade must provide Suite with a report identifying Orchestrade's

5

contracts with customers who use the ALib software and stating the royalty fees it owes to Suite.

## III.   The Parties Confirm Their Understanding of the Agreement

21.     As potential customers began to approach the parties about the Integrated Platform, the parties exchanged emails on November 1, 2013 confirming their understanding of the Agreement.

22.     On November 1, 2013, Orchestrade's Chief Executive Office, Hakim Erhili, expressly confirmed that "OT will contain ALib components for all OT customers."   In addition, Mr. Erhili confirmed that "any OT prospect that already has a license to ALib will be considered the same as an OT prospect that doesn't have an ALib license.   In other words, the royalty share to Suite would be the same either way."   Finally, the email also acknowledged and confirmed that Suite would not receive a commission for referring existing ALib customers to Orchestrade, because Suite's "incentive to promote OT is based on the ALib royalties."

23.     Accordingly, the Agreement is clear – and the parties re-confirmed – that royalty fees are owed to Suite for each customer that uses the Integrated Platform and has access to ALib without regard to whether the customer was a Prior ALib Customer.   As explained by Orchestrade's CEO Erhili, this arrangement benefits Orchestrade by encouraging Suite to refer its customers to Orchestrade.   Suite, on the other hand, benefits from the receipt of royalty fees from ALib customers who adopt the Integrated Platform without having to negotiate a referral commission.

## IV.   Orchestrade's Breach

24.     Despite that the Agreement was executed – and the Integrated Platform launched – more than five years ago, Orchestrade has never made a royalty payment to Suite.

6

Accordingly, to date the Agreement has benefited *only* Orchestrade. Suite has never received any benefit from the Agreement nor has it recouped its advertising expenses or the resources it expended working with Orchestrade to build the Integrated Platform.

25.     Indeed, Orchestrade has sold licenses to at least two Prior ALib Customers that Suite referred to Orchestrade and has failed to pay Suite royalty fees in connection with those licenses.  Similarly, Orchestrade has never provided a contractually-required quarterly report to Suite that would enable Suite to determine the amount of royalties owed to it.

26.     In 2013, Orchestrade licensed the Integrated Platform to a large hedge fund ("Hedge Fund Customer 1") who was a Prior ALib Customer.  Orchestrade admitted that Orchestrade connected Hedge Fund Customer 1's existing ALib software to the Integrated Platform.

27.     Despite the clear royalty obligation under the Agreement, Orchestrade refused to pay Suite in connection with the fund's license and it has never provided Suite with a quarterly report that would enable it to invoice the royalty fees.

28.     In 2018, a hedge fund that licenses Suite's ALib software ("Hedge Fund Customer 2") approached Suite about finding a platform that was integrated with ALib. Because of Suite's confidence in the Integrated Platform – which it had helped build – *and* because it would receive a royalty pursuant to the Agreement, Suite referred Hedge Fund Customer 2 to Orchestrade to discuss obtaining a license.

29.     In May 2018, after Hedge Fund Customer 2 contacted Orchestrade upon Suite's referral, Mr. Erhili sent an email to Suite's managing partner asking him to provide information that would help Orchestrade sign a license deal with the customer.

30.     Suite obliged Mr. Erhili's request and ensured that the Suite employee with the most knowledge about Hedge Fund Customer 2 spoke with Mr. Erhili to assist Orchestrade in signing the customer.

31.     On October 20, 2018, Mr. Erhili informed Suite that Orchestrade had signed Hedge Fund Customer 2.  He also informed Suite that the customer had asked to connect its existing ALib software to the Integrated Platform and that Orchestrade may need new license keys and technical support from Suite in order to connect ALib to the Integrated Platform.

32.     On October 22, 2018, Suite congratulated Orchestrade on signing Hedge Fund Customer 2 and attempted to confirm that Orchestrade would comply with the Agreement and pay Suite a royalty fee in connection with Orchestrade's sale of a license to Hedge Fund Customer 2.  This attempt was ignored.

33.     Suite made several additional attempts in 2018 to communicate with Orchestrade confirming the payment of royalty fees, but Orchestrade ignored those communications and never met its obligation pay the royalty fees.

34.     On January 17, 2019 Suite, through its counsel, wrote to Orchestrade requesting that it confirm that (1) Orchestrade would be furnishing Suite with a quarterly report by January 31, 2019 that would enable Suite to calculate the royalties owed to it as a result of Orchestrade's sale of licenses and (2) upon receipt of an invoice from Suite reflecting royalty fees for Hedge Fund Customer 2 that Orchestrade would pay such invoice as required by the Agreement.

35.     On January 31, 2019, Orchestrade informed Suite for the first time that it refused to pay royalty fees in connection with Hedge Fund Customer 2.  It also refused to provide a quarterly report for the fourth quarter of 2018.

CO\6056807.9

36.     In a February 8, 2019 letter, Orchestrade admitted that it had connected Hedge Fund Customer 2's ALib software, but nonetheless continued to maintain that no royalty was owed because "Orchestrade did not package nor bundle its Orchestrade software with any components of Suite's Licensed Software[.]"

37.     Orchestrade's position is contrary to the Agreement.  Indeed, as set forth above in Paragraph 17 above, Reseller Software is defined as Orchestrade's Software that contains at least one (1) component of ALib.  Thus, there is no requirement that Orchestrade "package or bundle" Orchestrade Software with components of Suite's Licensed Software.  Accordingly, Orchestrade's position as stated in its letter is in contravention of the plain terms of the Agreement.  Moreover, Orchestrade's position is flatly contradicted by its CEO's admission in 2013 that all of Orchestrade's software contains ALib components.[1]

38.     On information and belief, Orchestrade has received at least $1 Million in license fees from Hedge Fund Customers 1 and 2.  Remarkably, Orchestrade has not paid Suite *anything* in connection with its receipt of these substantial fees, despite (1) the Agreement's clear requirement that Orchestrade pay a royalty fee for each of these customers; (2) the prior representation of its CEO that Orchestrade would pay royalty fees in precisely this situation; and, (3) the fact that Orchestrade was only able to obtain these customers (and realize these

---

[1] Even assuming, arguendo that:  (i) Orchestrade's position that a "package or bundle" of components of ALib was required under the Agreement to earn a royalty – there is no such requirement; and (2) that Orchestrade's CEO had not admitted in 2013 that Orchestrade's interpretation of the Agreement was consistent with Suite's with respect to the obligation to compensate Suite for Prior ALib Customers who access ALib, Orchestrade would still owe Suite a royalty fee in connection with Hedge Fund Customer 2's license fees pursuant to terms of the Agreement, which expressly authorizes the parties to specify "such other [Orchestrade] software as agreed with [Suite] from time to time" that will be subject to the Agreement's 25% royalty fee.  At a minimum, the parties' 2013 exchange was an express agreement by the parties that Orchestrade would pay a 25% royalty for any customer, including a customer with a preexisting license to ALib, who uses any version of Orchestrade software that provides the customer with the ability to access ALib.

fees) due to Suite's assistance and the customers' demand for Suite's ALib analytics library software.

39.     Because Orchestrade has professed the ability to bypass Suite and connect the ALib software held by Prior ALib Customers to the Integrated Platform without Suite's knowledge or assistance, absent assistance from this Court Suite has no way of knowing the number or identity of additional Prior ALib Customers who have purchased licenses from Orchestrade or of determining the amount of royalty fees that Orchestrade has wrongfully withheld.

## **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

40.     Suite repeats and realleges Paragraphs 1 through 39 of the Complaint as if fully set forth herein.

41.     Suite and Orchestrade entered into a binding contract, specifically the May 22, 2013 Agreement.

42.     Suite has at all times performed all of the obligations it undertook in the Agreement.

43.     Orchestrade has materially breached the Agreement by failing to make royalty payments in the amount of 25% of the license fees that it received from Hedge Fund Customer 1.

44.     Orchestrade has materially breached the Agreement by failing to make royalty payments in the amount of 25% of the license fees that it received from Hedge Fund Customer 2.

CO\6056807.9

45.     Orchestrade has materially breached the Agreement by failing to provide any quarterly reports that would enable Suite to calculate the license fees owed to it.

46.     As a result of Orchestrade's misconduct, Suite has been damaged in an amount to be proven at trial of at least the royalty fees owed to it in connection with Orchestrade's sale of licenses to Hedge Fund Customer 1, to Hedge Fund Customer 2, , and to any other Prior ALib Customers that Orchestrade has covertly signed and connected to ALib without paying the required royalty fees.

### SECOND CAUSE OF ACTION – IN THE ALTERNATIVE FOR UNJUST ENRICHMENT

47.     Suite repeats and realleges Paragraphs 1 through 39 of the Complaint as if fully set forth herein.

48.     Suite and Orchestrade have had a business relationship since 2013.

49.     In November 2013 Orchestrade created an expectation that it would pay a royalty equal to 25% of the license fees it receives from customers that Suite refers to Orchestrade who use the Integrated Platform to access ALib.  More specifically, Orchestrade's CEO Hakim Erhili told Suite's managing partner in writing that it would pay Suite royalty fees under the Agreement for all future Prior ALib Customers who adopt the Integrated Platform.

50.     Acting on Orchestrade's representation, Suite referred Hedge Fund Customer 2 to Orchestrade and did not seek to obtain a referral fee.  Orchestrade sold a license to Hedge Fund Customer 2 on October 10, 2018, and it has refused to pay Suite any royalty fees in connection with that license.

51.     By reason of the foregoing, Orchestrade has been unjustly enriched at Suite's expense in the amount of 25% of the license fees it received from Hedge Fund Customer 2.  It

CO\6056807.9

would be in opposition to equity and good conscience to permit Orchestrade to retain such enrichment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

a.   For entry of judgment against Defendant for all damages to which Suite may be entitled, including for all royalty fees owed to it pursuant to the Agreement;

b.   For an Order compelling Defendant to make all contractually-required royalty fee payments in the future, including royalty fees in connection with periodic license fees Defendant receives from Hedge Fund Customer 2;

c.   For prejudgment and post-judgment interest according to law; and

d.   For such other and further relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Suite demands trial by jury of all issues triable by right of jury.

Dated: New York, New York
          March 15, 2019

ICE MILLER LLP

By: ___/s/Justin E. Klein_____
          Justin E. Klein
          Thomas Bousnakis
1500 Broadway, 29th Floor
New York, New York 10036
(212) 824-4793
*Attorneys for Plaintiff Suite, LLC*